# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| STEVEN KEITH GLATFELTER, | * |
| Plaintiff, | * |
| vs. | * CIVIL ACTION 13-00122-CG-B |
| SAM COCHRAN, *et al.*, | * |
| Defendants. | * |

## REPORT AND RECOMMENDATION

Plaintiff, a Mobile County Metro Jail ("jail") pretrial detainee proceeding *pro se* and *in forma pauperis*, filed a Complaint alleging violations under 42 U.S.C. § 1983. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). It is recommended, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) or (ii), that Gladfelter's claims against Defendants Cochran, Oliver, Stallworth, and Williams be dismissed with prejudice as frivolous; that Gladfelter's claims against Defendant Barrett seeking to impose liability based on others' actions be dismissed with prejudice as frivolous; that Gladfelter's claims against Defendant Barrett for ignoring his requests be dismissed without prejudice for failure to state a claim; and that Gladfelter's claims against Defendants Simmons and Ezell be

dismissed without prejudice for failure to state a claim upon which relief can be granted. This action will proceed with respect to the remaining Defendants.

**I. Amended Complaint.** (Doc. 12).

Plaintiff filed the Amended Complaint pursuant to the Court's Order (Doc. 11) requiring that he plead an amended complaint that contained only one primary claim and any claims closely related to it. In his Amended Complaint, Gladfelter chose to proceed on a claim based on inmate David Webster's assault on him on January 20, 2013 at the jail. (Doc. 12 at 4). Gladfelter lists fifteen individuals as Defendants with respect to this claim, namely, Sam Cochran, Sheriff of Mobile County, Alabama; Trey Oliver, III, Warden of the jail; Officer Rutland, an officer at the jail; Sallie Stallworth, a captain/shift commander at the jail; Sgt. Bonner, a docket supervisor at the jail; Sgt. Pope, a shift commander/floor supervisor; Officer Coleman, a security officer at the jail; Sgt. King, a shift commander/floor supervisor; Lt. Deming, a shift commander/floor supervisor; Marquette Williams, Medical Director at Corizon Health Service ("Corizon"); Dr. Barrett, medical doctor/staff supervisor at Corizon; Amy (whose last name is unknown), a certified registered nurse practitioner for Corizon; "Dr. P\_\_\_\_\_ "(the spelling of this Defendant's last name is not known to

2

Plaintiff), a medical doctor/staff supervisor for Corizon; Nurse Simmons, a nurse supervisor for Corizon; and Nurse Ezelle, a nurse for Nephi-care Health services ("Nephicare").

Gladfelter alleges that on January 13, 2013, upon his arrival at the jail, he was placed in general population. (Id., at 3). On January 15, 2013, inmate Webster was placed in the "same cell" with him even though he had listed inmate Webster on his enemy list on "January 21, 2012[,]" (the year before). (Id.). According to Gladfelter, when he previously listed Webster as a "known enemy," he was assured by Defendant Bonner that "they would not be housed together." (Id.). Nonetheless, in 2013, Gladfelter was housed with inmate Webster, and he "notified security staff at [the jail] with verbal and written requests to be moved[,]" which were ignored. (Id.). Gladfelter contends that although he attempted to avoid a physical confrontation with inmate Webster, inmate Webster assaulted him on January 20, 2013. (Id., at 4). Plaintiff suffered a fractured left hand and an injury to his lower lumbar area. (Id.).

An unidentified nurse at the jail's medical clinic examined Gladfelter, found him to be "alright," and dismissed him to general population, even though the fracture to his hand "was obvious, [in that it was] extremely swollen, blue in color,

3

numb, and horrifically painful." (Id.). After a while in population, Gladfelter pleaded with Defendant Coleman for medical assistance for his "obvio[u]s pain and injury." (Id.). Defendant Coleman notified the floor supervisor, Defendant King, who denied Gladfelter treatment and began "assaulting Plaintiff by grabbing his neck, choking him, cursing him, and subsequently shoving him into a cell and threatened . . . further physical injury." (Id.). Defendant King told Gladfelter that he "will beat [Plaintiff's] ass if [Plaintiff] sa[id] one more word." (Id.). Defendant Deming was present for this incident and "clearly endorsed the actions of [Defendant] King." (Id.). They then left Gladfelter in the cell. (Id.).

When Gladfelter submitted a sick call request to the clinic on January 21, 2013, the clinic was under new management, which was the result of Defendant Cochran, former jail warden Haley, and Defendant Oliver contracting with Corizon to provide medical services for the inmates at the jail. (Id.). Defendant Williams and Defendant Barrett were now directing the clinic. (Id., at 5). On January 23, 2013, Gladfelter was finally seen at the clinic and had an x-ray taken of his hand, which confirmed that it was fractured. (Id.). Defendant Amy, a certified registered nurse practitioner, wrapped his left hand with an Ace bandage, but his injury to his lower back was not examined. (Id.).

4

Furthermore, a doctor did not examine him. (Id.). Gladfelter was released into population, instead of being placed in the medically segregated housing unit ("SHU") where severely injured inmates are typically placed because they are deemed vulnerable to attacks in population. (Id.).

Gladfelter made numerous requests on account of his pain and suffering, which were ignored, but which eventually resulted in in him being sent to the University of South Alabama Medical Center on February 11, 2013. (Id.). By this time, Gladfelter's hand had healed with a "gross deformation." (Id.). At the hospital, an orthopedic specialist examined his hand, took x-rays, and evaluated it for surgery. (Id.). Gladfelter's left hand, which is his dominant hand, was placed in a cast and he was given ibuprofen for pain. (Id.). Gladfelter was then placed in SHU. (Id.).

According to Gladfelter, his lower back was not examined until May 17, 2013, when Defendant "Dr. P\_\_\_\_\_" of Corizon examined it. (Id.). He placed Gladfelter on a mild muscle relaxer and ibuprofen for a short period of time. (Id.). Eventually, the cast was removed with no mention of surgery. (Id., at 5-6). To date, Gladfelter's left hand and lower back still cause him "undue pain and suffering." (Id., at 6). The new health care provider, Nephi-care, prescribed 1200 milligrams

5

of ibuprofen daily, but it will not provide further medical assistance for his injuries. (Id.). Its employee, Defendant Ezelle, told Gladfelter that when he is released, he should get an examination, as Nephi-Care was not responsible for the injury. (Id.).

For relief, Gladfelter seeks compensatory and punitive damages and any and all other relief the Court deems appropriate. (Id., at 13).

**II. Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).**

Because Gladfelter is proceeding *in forma pauperis*, the Court is reviewing his Amended Complaint (Doc. 12) under 28 U.S.C. § 1915(e)(2)(B). Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 1831-32, 104 L. Ed. 2d 338 (1989). A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit, id., 490 U.S. at 327, or the claim seeks to enforce a right that clearly does not exist. Id.

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997). To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must

6

show plausibility. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 555, 557 (second brackets in original). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Furthermore, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted. Jones v. Bock, 549 U.S. 199, 215, 127 S. Ct. 910, 920-21, 166 L. Ed. 2d 798 (2007).

When considering a *pro se* litigant's allegations, a court gives them a liberal construction holding them to a more lenient standard than those of an attorney. Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 595-596, 30 L. Ed. 2d 652 (1972). The court, however, does not have "license . . . to rewrite an

7

otherwise deficient pleading [by a pro se litigant] in order to sustain an action." GJR Investments v. County of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998), overruled on other grounds by Randall v. Scott, 610 F.3d 701, 710 (11th Cir. 2010) (relying on Iqbal, 556 U.S. 662). Furthermore, the court treats as true factual allegations, but it does not treat as true conclusory assertions or a recitation of a cause of action's elements. Iqbal, 566 U.S. at 681. In addition, a *pro se* litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure." Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989), cert. denied, 493 U.S. 863 (1989).

**III. Discussion.**

At the time Gladfelter's claims arose in this action, he was a pretrial detainee at the jail. (Doc. 12 at 7). As a pretrial detainee, his claims are for violations of the Due Process Clause of the Fourteenth Amendment. Goodman v. Kimbrough, 718 F.3d 1325, 1331, n.1 (11th Cir. 2013). The standards employed by courts under the Fourteenth Amendment are identical to standards under the Eighth Amendment. Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007). Courts, therefore, uses cases arising under either amendment interchangeably. See Id.

**A. Defendants Sheriff Cochran, Warden Oliver, and Captain Stallworth.**

Gladfelter alleges that Defendant Cochran's employees denied him medical treatment after he was assaulted on January 20, 2013 at the jail. (Doc. 12 at 7). Similarly, he alleges that Defendant Oliver's staff members under his direct supervision denied and refused Gladfelter medical treatment after the assault. (Id.). In addition, Gladfelter alleges that employees under Defendant Stallworth's supervision neglected their responsibilities by allowing physical harm to come to him and by refusing or denying him access to medical treatment. (Id. at 9).

Gladfelter is seeking to hold these three supervisory officials liable in their supervisory capacities for the actions of employees whom they supervise. Holding a defendant liable solely for the actions of a subordinate or an employee is not recognized as a theory of liability under § 1983. See Monell v. Department of Social Servs., 436 U.S. 658, 691-92, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978) (ruling that in a § 1983 action the city could not be held liable either vicariously or under the theory of *respondeat superior* for the acts of an employee). In order to hold a supervisor liable under 42 U.S.C. § 1983, "a plaintiff must allege that the supervisor personally participated in the alleged unconstitutional conduct or that

there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Franklin v. Curry, 2013 U.S. App. LEXIS 25515, *6, 2013 WL 6728101, at *8 (11th Cir. Dec. 23, 2013) (citation omitted). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. The facts that must be alleged "will vary with the constitutional provision at issue." Id. (observing that a claim for invidious discrimination requires the plaintiff to "plead and prove that defendant acted with discriminatory purpose").

In the present action, Gladfelter's allegations do not contain facts that would show a causal connection on the part of these supervisory officials to a deprivation of Plaintiff's constitutional rights. His allegations instead show that he is seeking to hold these supervisory officials liable only because they were the supervisors of officers who took the offending actions against Plaintiff. And, the only other reference to Defendants Cochran and Oliver is that they, along with a former jail warden, contracted with Corizon to provide medical care to the jail's inmates, which appears to have been offered only to describe the historical succession of the different corporate medical providers that employed the individual medical

10

Defendants. (Doc. 12 at 5). Accordingly, the Court finds that the claims against Defendants Cochran, Oliver, and Stallworth are due to be dismissed with prejudice as frivolous.

**B. Defendant Williams, Medical Director for Corizon.**

With regards to Marquette Williams, the medical director for Corizon at the jail, Gladfelter alleges that from January 20, 2013 to February 11, 2013, this Defendant "knowingly and willfully supervised the medical clinic and staff members who also ignored, denied, and delayed medical treatment to him. Furthermore, Gladfelter asserts that they allowed him "to remain in general population as vulnerable to additional assaults, leaving him in undue pain and suffering at Metro [J]ail." (Doc. 12 at 11). Gladfelter claims that this was cruel and unusual punishment and a "delay/denial of medical treatment." (Id.). Gladfelter's only other reference to Defendant Williams is that "the medical facility was directed by now 'former' medical administrator; Marquette Williams and now former Dr. Barrett." (Id. at 4-5).

These allegations against Defendant Williams, at best, attempt to hold him liable for the actions of others whom he supervised. As discussed above, a defendant in a § 1983 action cannot be held liable for actions of another either vicariously or on the basis of *respondeat superior*. See Monell, 436 U.S. at

11

691-92. Thus, the claim against Defendant Williams is due to be dismissed with prejudice as frivolous.

**C. Defendant Dr. Barrett.**

Gladfelter names Dr. Barrett, who was employed as the medical doctor and staff supervisor at Corizon, as a Defendant for "knowing[ly] and willfully ignor[ing] specific requests (written and verbal) to assist plaintiff with his injuries. [He] did nothing regarding these injuries." (Doc. 12 at 11). Gladfelter describes this claim as being for cruel and unusual punishment and for the denial or delay of medical treatment. (Id.). The allegations against Defendant Barrett are similar to the claim against Defendant Williams, to the extent that Defendant Barrett is identified as a supervisor. However, the allegations diverge when Gladfelter claims that Defendant Barrett ignored his written and verbal requests for help with his injuries, and thereby did nothing to help him. Even though these allegations do not seek to hold Defendant Barrett liable for the actions of others, these allegations, however, do not state a plausible claim against Defendant Barrett.

In order to state a medical claim under § 1983, an inmate is required to show that a defendant has been deliberately indifferent to his serious medical need. Estelle v. Gamble, 429 U.S. 97, 104-5, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976). To

12

establish deliberate indifference, it must be shown that the defendant must both "'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003) (quoting Farmer v. Brennan, 511 U.S. at 837). That is, "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Id. (quoting McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999)).

Gladfelter states that Defendant Barrett "knowingly and willfully ignored specific requests." Even though Gladfelter alleges that he made both verbal and written requests, his allegations do not contain facts that show Defendant Barrett was actually aware of these requests and then deliberately chose to ignore them. The Court considers Gladfelter's use of "knowingly," "willfully," and "ignore" to be conclusions that the Court would draw based on facts that are alleged. Furthermore, these allegations are extremely vague and lack the specificity required to give fair notice to Defendant Barrett and the Court of the precise incident and Defendant Barrett's actions in response. See Harrison v. Benchmark Elecs. Huntsville, Inc., 593 F.3d 1206, 1214 (11th Cir. 2010) ("The

13

point is to give the defendant fair notice of what the claim is and the grounds upon which it rests. A complaint's factual allegations must be enough to raise a right to relief above the speculative level.") (quotation marks, citations, and brackets omitted). Due to the lack of facts to support the allegations, Gladfelter's allegations are merely speculative and fail to state a claim that is plausible against Defendant Barrett. Therefore, it is recommended that Gladfelter's claims against Defendant Barrett with respect to supervision be dismissed with prejudice as frivolous and with respect to ignoring Plaintiff's requests be dismissed without prejudice for failure to state a claim upon which relief can be granted.

**D. Defendant Simmons.**

In addition, Gladfelter alleges that Defendant Simmons, a nurse, "ignored requests made to her from plaintiff regarding his pain and suffering from injuries[] and housing location of general population at Metro jail between the dates of 01-23-13 and 02-11-2013." (Doc. 12 at 12). Gladfelter's allegations lack facts showing the specific serious medical need that he presented to her and was ignored by her. He also fails to show how ignoring his housing location request constituted a deliberate indifference to a serious medical need. Furthermore, facts about Defendant Simmons' authority and the actions she is

14

capable of taking with respect these allegations were omitted. This lack of facts prevents Gladfelter from stating a plausible claim against Defendant Simmons. See Iqbal, *supra*. Here again, Gladfelter's allegations deprive Defendant Simmons and the Court of fair notice of his claim against her. See Harrison, *supra*. Accordingly, Gladfelter has failed to state a claim against Defendant Simmons upon which relief can be granted. Thus, the claims against her are due to be dismissed without prejudice.

**E. Defendant Ezelle.**

Another nurse whom Gladfelter has named as a Defendant is Mr. Ezelle, an employee of Nephi-care. (Doc. 12 at 12). Gladfelter claims that Defendant Ezelle denied him medical treatment and inflicted cruel and unusual punishment. (Id.). The allegations supporting these claims are as follows: "Nephi-care denied all or any responsibility regarding the injuries and refuses any further treatment of injuries. All responses [sic] regarding any treatment for injuries have been ignored." (Id.). These allegations are confusing in that a description of a specific act taken by Defendant Ezelle is not contained in the allegations. The allegations supporting the claims refer to Nephi-care, not to Defendant Ezelle. And, the claims of denying or refusing medical treatment or of inflicting cruel and unusual punishment are lacking in specificity so as to show a violation

15

of the Fourteenth Amendment and to give fair notice to Defendant Ezelle and the Court of the claims. Thus, Gladfelter's allegations against Defendant Ezelle are merely speculative, and the claims against him are due to be dismissed without prejudice for failure to state a claim because they are not plausible. See Iqbal, *supra*.

**IV. Conclusion.**

Based upon the foregoing reasons, it is recommended, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) or (ii), that Gladfelter's claims against Defendants Cochran, Oliver, Stallworth, and Williams be dismissed with prejudice as frivolous; that his claims against Defendant Barrett seeking to impose liability based on others' actions be dismissed with prejudice as frivolous; that his claims against Defendant Barrett for ignoring Plaintiff's requests be dismissed without prejudice for failure to state a claim; and that his claims against Defendants Simmons and Ezell be dismissed without prejudice for failure to state a claim upon which relief can be granted.

**NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within

16

fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. L.R. 72.4. The parties should note that under Eleventh Circuit precedent, "the failure to object limits the scope of [] appellate review to plain error review of the magistrate judge's factual findings." Dupree v. Warden, Attorney General, State of Alabama, 715 F.3d 1295, 1300 (11th Cir. 2011). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **22nd** day of **April, 2014.**

                                                    /s/ SONJA F. BIVINS
                                        **UNITED STATES MAGISTRATE JUDGE**